IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CR-51-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **O R D E R** |
| | ) |
| MARCUS SHUAIB SMITH | ) |

This matter comes before the Court on defendant Marcus Smith's motion to suppress all evidence obtained from mobile GPS devices pursuant to an allegedly defective search warrant. [DE 51]. A hearing was held on the matter before the undersigned on June 4, 2014, in Raleigh, North Carolina. For the reasons discussed below, defendant's motion is denied.

## BACKGROUND

Mr. Smith is charged in two counts of a three-count indictment with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and one count of aiding and abetting the possession with intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1). [DE 1]. Mr. Smith is not charged in the third count of the indictment.

Neither party presented evidence at the June 4 hearing. Materials submitted by the parties demonstrate that Mr. Smith has been the subject of a drug trafficking investigation since approximately February 2012. In May 2014, Raleigh Police Department Detective J.A. Battle obtained a search warrant authorizing placement of a GPS device on a 2005 black Acura MDX registered to Mr. Smith's now-wife, Jevae Pope. Det. Battle renewed the warrant three times between June 2014 and October 2014, with three separate Wake County Superior Court Judges signing off on the warrants after reviewing Det. Battle's affidavits. In July 2014, Det. Battle obtained a search warrant authorizing placement of a GPS device on two other cars registered to

Ms. Pope—a 1999 black Acura 3.5RL and a 2003 silver Acura 3.2TL. In October 2014, another Superior Court Judge authorized a renewal of the warrant for the 2003 Acura.

Each application and affidavit contained essentially the same facts and allegations, which can be summarized as follows:

1) A reliable confidential informant told Det. Battle that defendant sells large quantities of marijuana;

2) Defendant was charged with possession of marijuana in January 2012, possession with intent to sell and deliver marijuana in June 2005, July 2008, and December 2009, and maintaining a dwelling in July 2008;

3) In December 2010, defendant was arrested for robbery in which he used a vehicle owned by Jevae Pope;

4) Defendant was robbed at his home in April 2013. The suspected robber told police defendant was a known drug dealer with over $1 million in product in a stash house;

5) Several police reports indicate that defendant's live-in girlfriend is Jevae Pope;

6) Ms. Pope maintains a water account at what is believed to be defendant's address;

7) Det. Battle conducted surveillance on the home and saw the 2005 Acura parked in the driveway;

8) Det. Battle conducted a trash pull at the above-mentioned residence and found drug packaging materials that tested positive for marijuana and a document addressed to Jevae Pope;

9) The target vehicles are registered to Ms. Pope;

10) The target vehicles are operated by defendant.

The GPS monitors demonstrated that the cars frequently travelled to 6616 Lyndale Drive. A subsequent search of the address resulted in the seizure of more than 150 pounds of marijuana, which led to the instant charges.

DISCUSSION

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Fourth Amendment generally requires the police to obtain a warrant before conducting a search." *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). In *United States v. Jones,* 132 S. Ct. 945, 949 (2012), the Supreme Court held that the physical trespass of placing a GPS tracking device on a vehicle constitutes a search. The Court did not, however, "decide whether reasonable suspicion or probable cause may justify warrantless GPS attachment to vehicles . . . ." *United States v. Stephens*, 764 F.3d 327, 330 (4th Cir. 2014). "Although the Supreme Court did not consider whether warrants are required for *all* GPS monitoring, the United States Court of Appeals for the Third Circuit recently 'caution[ed] that, after *Jones*, law enforcement should carefully consider that a warrant may be required when engaging in such installation and surveillance.'" *United States v. Fisher*, No. RDB–14–413, 2015 WL 1862329 at *3 (D. Md. 2015) (citing *United States v. Katzin*, 769 F.3d 163, 170 (3d Cir. 2014) (emphasis in original). Here, law enforcement obtained a warrant and the government has not argued that any exception to the warrant requirement applies. The Court finds that a warrant was necessary in order for law enforcement to place the GPS monitors on the subject vehicles.

A warrant must be supported by probable cause, which exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place. *Ornelas v. United States*,

3

517 U.S. 690, 696 (1996). One presented with a search warrant application "must 'make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Lalor*, 996 F.2d 1578, 1580 (4th Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[E]vidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt." *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984). Staleness, however, is not simply a question of the passage of time. *Id.* A court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.* When reviewing another court's probable cause determination, the reviewing court is to determine whether the issuing court "had a substantial basis for the decision" and must "accord the [underlying] decision great deference." *Lalor*, 996 F.2d at 1581 (internal citation and quotation omitted).

A better practice by law enforcement here would have been identifying Mr. Smith driving each target vehicle. The best practice would have been to identify defendant driving each target vehicle to a particular location. No GPS tracking device would have been necessary; law enforcement could have used old-fashioned surveillance techniques to obtain this information. Neither of these practices was employed here. Beyond Det. Battle's bare-bones, blanket statement that "the above described vehicle is being operated by" defendant, nothing indicates that Mr. Smith operated any of the target vehicles. Similarly, the only evidence of a stash house is an uncorroborated statement by a suspected robber of unknown reliability. Because defendant's connection to the vehicles and the existence of the stash house are both tenuous, the sufficiency of the probable cause is called into question.

4

Given the deference due to the issuing courts, however, the Court cannot conclude that their decisions as to probable cause lacked a substantial basis. The criminal activity relied upon by Det. Battle in order to justify the GPS monitors is old, but the affidavits imply that defendant's drug trafficking activity was ongoing, rather than relating to a single incident, as was the case in *United States v. Doyle*, 650 F.3d 460, 475 (4th Cir. 2011), on which defendant relies. Indeed, the allegations in the affidavit proceed roughly in chronological order. Looking at the nature of the activity alleged and the length of the activity, as required by *McCall*, the Court cannot conclude that the affidavits were stale and that issuing courts lacked a substantial basis for their decision. 740 F.2d at 1336. It is reasonable that the issuing courts would have determined that Mr. Smith was engaged in the business of selling large quantities of marijuana at the time the affidavit was drafted.

The affidavits also state that Mr. Smith was a known drug dealer with over $1 million in product located in a stash house, lived with Ms. Pope, and that at least one of the three target vehicles, which were all registered to Ms. Pope, was seen in the driveway of defendant's residence. Combined with law enforcement's sworn statement that defendant operated the target vehicles, the affidavits demonstrated that there was a nexus between the vehicles and the existence of marijuana in a stash house.

Additionally, four separate superior court judges found that these facts provided probable cause to believe that a GPS monitor would provide relevant information as to where Mr. Smith stored illegal narcotics. *See, e.g., Lalor*, 996 F.2d at 1583 (finding officer's reliance on affidavit objectively reasonable where multiple judges determined that probable cause existed). Though law enforcement could have been more thorough, the Court finds that the affidavits were not so bare bones as to be unsupported by probable cause.

5

Moreover, even if the affidavits did not support a finding of probable cause, the good faith exception applies. Typically, evidence seized in violation of the Fourth Amendment is suppressed pursuant to the exclusionary rule. *Wong Sun v. United States*, 37 U.S. 471 (1963). Where an officer relies in good faith on a warrant, however, the fruits of the search are not excluded, even if the warrant is "subsequently invalidated." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984) (holding that courts should only suppress evidence obtained pursuant to a subsequently invalidated warrant if "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization"). There are only four circumstances in which the *Leon* good faith exception does not apply:

> (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)"; (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and (4) if under the circumstances of the case the warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*United States v. Dequasie*, 373 F.3d 509, 519–20 (4th Cir. 2004) (quoting *Leon*, 469 U.S. at 923). Here, Mr. Smith argues that the affidavits were drafted with reckless disregard for the truth and that they were so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *Id.* Defendant's arguments fail.

"[T]o defeat the operation of the good faith exception requires not only intentional or reckless falsity, but also that the 'the (sic) magistrate or judge in issuing a warrant was misled' by such falsity." *United States v. Doyle*, 650 F.3d 460, 469 (4th Cir. 2011) (quoting *Leon*, 468 U.S. at 923). A defendant seeking to defeat the good faith exception must not only demonstrate that the statements in the affidavit are inaccurate, but also "that they were critical to the finding

6

of probable cause." *Id.* Mr. Smith argues that Det. Battle misled the judicial officer by not including the ultimate disposition of the charges listed in the affidavit. Charged conduct, however, can be considered in the probable cause analysis. *See United States v. Bynum*, 293 F.3d 192, 197–98 (4th Cir. 2002); *See also United States v. Miller*, 925 F.2d 695, 699–700 (4th Cir. 1991). Moreover, Det. Battle did not make a misstatement—Mr. Smith was, in fact, charged with the listed crimes. Last, defendant has proffered no evidence to demonstrate that the statements were critical to the finding of probable cause. Indeed, Mr. Smith's criminal record was only one factor listed in support of probable cause. The Court finds that the affidavits were not drafted with reckless disregard for the truth.

Similarly, the Court cannot find that the affidavits were so bare-bones as to render official belief in the existence of probable cause unreasonable. First of all, the Court has determined that probable cause existed, which implies that law enforcement's reliance on the warrants was reasonable. Second, as discussed *supra*, four different Superior Court judges found that essentially the same affidavit provided probable cause, which implies that reliance on the warrant was reasonable. Additionally, Mr. Smith's analogy to *Doyle*, in which the defendant was charged with receipt and possession of child pornography, is misplaced. There, the court refused to apply the good faith exception where "the information before the magistrate failed to demonstrate whether the pictures allegedly possessed by Doyle were in fact illegal to possess and failed to indicate when Doyle allegedly possessed them." *Doyle*, 650 F.3d at 476. Unlike the pictures at issue in *Doyle*, there is no question here that the alleged activity—trafficking in marijuana—is illegal. Additionally, *Doyle* involved a single instance rather than an ongoing criminal activity as is the case here. The Court finds, therefore, that even if the warrants are not supported by probable cause, the good faith exception applies and suppression is inappropriate.

7

## CONCLUSION

For the foregoing reasons, defendant's motion to suppress [DE 51] is DENIED.

SO ORDERED, this __9__ day of June, 2015.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE