IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-51-BR
No. 5:18-CV-499-BR

MARCUS SHUAIB SMITH,          )
                              )
                              )
        v.                    )          ORDER
                              )
UNITED STATES OF AMERICA      )

This matter is before the court on the government's second motion to dismiss petitioner's 28 U.S.C. § 2255 motion.   (DE # 258.)

## I.  BACKGROUND

In 2016, a jury convicted petitioner of conspiracy to distribute and possess with the intent to distribute marijuana in violation of 21 U.S.C. § 846 and possession with intent to distribute 50 kilograms or more of marijuana and aiding and abetting the same in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).[1]   The court sentenced petitioner to a total term of 132 months imprisonment.   Petitioner appealed the denial of his motion to suppress, and the Fourth Circuit Court of Appeals affirmed.   (DE # 197.)   The Supreme Court denied petitioner's petition for a writ of certiorari.   Smith v. United States, 138 S. Ct. 406 (2017) (mem.).   In October 2018, petitioner timely filed his § 2255 motion, alleging seven claims for relief.   (DE # 234; see also Mem., DE # 234-1.)

In January 2019, the government filed its initial motion to dismiss.   (DE # 242.)   The court granted in part that motion, dismissing petitioner's first claim, which challenged the denial

---

[1] In 2015, petitioner initially went to trial.   The jury could not reach a unanimous verdict on either charge, and therefore, the presiding district judge declared a mistrial.   (See 8/19/15 Minute Entry.)   The case was subsequently reassigned to the undersigned prior to the 2016 retrial.

of his motion to suppress. (4/14/20 Order, DE # 250.) Petitioner's other six claims were allowed to proceed. (Id.) The court also permitted petitioner to supplement his sixth claim with additional case law. (Id.; see also Mot., DE # 248.)

Petitioner then filed a motion to compel production of discovery material. (DE # 256.) In July 2020, the government filed the instant motion to dismiss. Petitioner filed a response, (DE # 261), which he later supplemented, (DE # 264). Most recently, petitioner filed a motion to supplement his § 2255 motion with additional case law. (DE # 265.)

## II. DISCUSSION

The government requests that the court dismiss petitioner's remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(6). As the court has recognized previously in this case:

> It is well established that a motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, and that the legal sufficiency is determined by assessing whether the complaint contains sufficient facts, when accepted as true, to "state a claim to relief that is plausible on its face." This plausibility standard requires only that the complaint's factual allegations "be enough to raise a right to relief above the speculative level."
> This standard applies equally to a Rule 12(b)(6) motion challenging a § 2255 motion.

(4/14/20 Order, DE # 250, at 1-2 (citations omitted).)

Petitioner's remaining claims consist of five claims based on substantive issues and a freestanding claim based on ineffective assistance of counsel. With the ineffective assistance of counsel claim, petitioner alleges that trial counsel erred by failing to challenge some of the substantive issues in his other five claims and in other respects. He alleges appellate counsel was ineffective by failing to raise the substantive issues in his other five claims on direct appeal. The government contends the remaining claims should be dismissed on the merits or for failure

2

to raise the issue on direct appeal.

As the court stated previously:

> [T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.
> "Ineffective assistance of counsel . . . is cause for a procedural default." To establish cause for default based upon ineffective assistance of counsel, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result.

(Id. at 4 (citations omitted).)

> "Judicial scrutiny of counsel's performance must be highly deferential." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "that, under the circumstances, the challenged action might be considered sound trial strategy."
> Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

United States v. Rangel, 781 F.3d 736, 742 (4th Cir. 2015) (citations omitted).

> With respect to performance, "[e]ffective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." Indeed, "winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." But appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal . . . with the strength of arguments that were raised.

United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018) (citations omitted) (some alterations added).

With these standards in mind, the court examines petitioner's remaining claims.

3

### A.    Claim Two (Prosecutorial Misconduct)

Petitioner claims that the prosecutor engaged in misconduct by (1) operating under a conflict of interest; (2) failing to turn over evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and related law; (3) inserting defendant's name and telephone number into timelines; (4) failing to provide authentic material to the jury; and (5) misstating facts during closing argument.    (Mot., DE # 234, at 5; Mem., DE # 234-1, at 5-10.)    The court agrees with the government that the prosecutorial misconduct claim based on these allegations is meritless.

First, in support of the prosecutor's alleged conflict of interest, petitioner has come forward with evidence that Lawrence Cameron, the Assistant United States Attorney who prosecuted petitioner in this court, was the same prosecutor when petitioner was convicted in state court of a controlled substance offense three years earlier.    (See Mem., Ex. B, DE # 234-4.)    However, that fact alone did not create a conflict of interest for Cameron necessitating his removal or disqualification from this case.    See, e.g., Cardenas v. United States, Nos. 1:12-CR-00512, 1:13-CR-00171, 2018 WL 4599838, at *14 (S.D. Tex. May 7, 2018) (report and recommendation) ("The mere fact that Young prosecuted Cardenas multiple times in state court and refused Cardenas's offer of assistance in the state court proceeding, did not saddle Young with a disqualifying interest in his role as an Assistant United States Attorney.    It did not give Young any conflicting loyalties or an impermissible personal interest in the outcome of the trial."), adopted, 2018 WL 3954154 (S.D. Tex. Aug. 17, 2018).

Second, petitioner claims the prosecutor violated Brady and related cases.    "[T]hese cases impress upon the Government a duty to disclose any evidence in its possession or control which is favorable to the defendant on the matter of guilt or punishment or which could be used

4

to impeach a Government witness." United States v. Barbeito, No. 2:09-CR-00222, 2010 WL 11530928, at *2 (S.D.W. Va. Apr. 12, 2010) (citing Brady, 373 U.S. at 87; Giglio v. United States, 405 U.S. 150, 154 (1972)).

In support of this aspect of his claim, petitioner cites the government's failure to identify certain exhibits on its exhibits list provided to petitioner at trial. (See Mem., DE # 234-1, at 7.) On its exhibit list, the government did not identify certain exhibits but instead stated beside the exhibit number, "Intentionally Left Blank." (Mem., Ex. D, DE # 234-6, at 2-6.) The government's failure to describe certain exhibits does not mean those exhibits were not disclosed to the defense pretrial, let alone that they should have been (i.e., because they were exculpatory or useful for impeachment). In fact, the government did not even use most of the non-identified exhibits at trial, (compare Ex. List, DE # 150, with, Mem., Ex. D, DE # 234-6, at 2-6), or, if they were used, they were used for illustrative purposes, (see, e.g., 2/3/16 Tr., DE # 165, at 29-30 (identifying government exhibit 21 as a calendar compiling data gathered from GPS and using for illustration of testimony)), whose disclosure was not required under the Brady-line of cases.

As further support for his claimed Brady violation, petitioner relies on correspondence between his wife and trial counsel about petitioner obtaining copies of various records, including discovery, in his case from counsel. (Mem., DE # 234-1, at 6, 10.) According to petitioner, this correspondence shows the government withheld from his discovery thousands of pages. (Id.) The court agrees with the government that such communications do not show any discovery violation by the government. (See Mem., Ex. C., DE # 234-5, at 2-9.) They only show trial counsel's attempts to provide copies of case documents to petitioner. (See id.) Petitioner also cites to trial testimony supposedly showing that the government failed to disclose

5

other documents, (Mem., DE # 234-1, at 8-9), but that testimony shows no such thing, (see 8/18/15 Tr., DE # 106-1, at 116; 2/3/16 Tr., DE # 165, at 56-64, 77-78, 279 ; 2/4/16 Tr., DE # 165-1, at 22-29, 41, 44, 238-39; 2/5/16 Tr., DE # 165-2, at 19-25).

Third, petitioner contends the prosecutor engaged in misconduct during trial by inserting petitioner's name and telephone number into timelines documenting telephone calls and text messages. According to petitioner, by inserting this information, the government violated an order from his first trial, and such information was false and not corroborated. (Mem., DE # 234-1, at 6-7.)

During petitioner's first trial, the government played a supposed recorded telephone call between co-conspirator Chris King and petitioner. The presiding judge prohibited the government from playing it a second time because the recording was difficult to understand. Rather, the judge instructed the government to directly question King about the substance of the telephone call. (See 8/18/15 Tr., DE # 106-1, at 80-81.) During petitioner's retrial, the government questioned King about the substance of that same telephone call, but did not play the recording of the call during King's testimony. (See 2/4/16 Tr., DE # 165-1, at 114-16.)

The government also questioned Detective Daniel Jones about that call because he (Jones) was with King when the call was made and recorded. (See 2/3/16 Tr., DE # 165, at 220-23.) However, the government did not play the recording of the call during Jones' testimony. Jones testified about information obtained from King's and another co-conspirator's cell phones pursuant to a search warrant and an administrative subpoena. (See id. at 223-30.) During this testimony, the government used two timelines, which included the cell phone owners' names and numbers, to enable Jones to illustrate his testimony. (See id. at 226-30;

6

Mem., Ex. D, DE # 234-6, at 9-10.)    Specifically regarding petitioner's name and associated telephone numbers (he had two), Jones and another witness testified to the numbers identified on the timelines as belonging to petitioner.    (See 2/3/16 Tr., DE # 165, at 147, 229.)    On cross-examination, Jones stated he did not prepare one timeline, but he reviewed it after the prosecutor's office put it together.    (2/4/16 Tr., DE # 165-1, at 22.)

To the extent the presiding judge's ruling in the first trial about the playing of the recording applied to petitioner's retrial, there was no violation of that ruling.    The recording was not played in the retrial.    Furthermore, the government did not knowingly use false testimony.    Jones' familiarity with the contents of the subject cell phones was established, and he and another witness confirmed petitioner's telephone numbers.    To the extent there was any discrepancy between any trial testimony and the timelines, the court instructed the jurors that any charts and summaries shown to them were not proof of any facts and if they found the charts or summaries were not truthful, then they must disregard them    (2/5/16 Tr., DE # 165-2, at 105.) Jurors are presumed to follow such instructions.    See United States v. Zelaya, 908 F.3d 920, 930 (4th Cir. 2018).    Thus, even if the timelines did not correctly reflect information from the evidence in the case, petitioner was not prejudiced.

As a fourth basis for his prosecutorial misconduct claim, petitioner contends the prosecution did not provide authentic material to the jury.    Specifically, he contends "snippets" from a video and from audio recordings and the CD's containing those video and audio recordings were not properly authenticated.    (Mem., DE # 234-1, at 8.)    The snippets were from a day-long surveillance video and from recorded jail telephone calls between the co-conspirators, including petitioner.

Jones, who was involved in the investigation, testified to the time and date of the surveillance video and that he had reviewed the entire video and compared the snippets to the original video to confirm they fairly represented what was on the original video. (See 2/3/16 Tr., DE # 165, at 183-89.) Jones and another detective, also involved in the investigation, testified they had listened to the jail telephone calls and were able to identify the speakers on the calls. (See 2/4/16 Tr., DE # 165-1, at 226-29, 247-48; 2/5/16 Tr., DE # 165-2, at 4-6.) Regarding the transcripts of those calls, which were shown to the jury simultaneously with the playing of the calls, the detectives confirmed that the transcripts fairly represented the contents of the calls, although one detective acknowledged that one transcript had minor errors. (See 2/4/16 Tr., DE # 165-1, at 229-31, 248; 2/5/16 Tr., DE # 165-2, at 3-4.) The detectives also confirmed the CD's contained the video and audio recordings. (2/3/16 Tr., DE # 165, at 183; 2/4/16 Tr., DE # 165-1, at 226-27, 247-48.)

The government properly authenticated the subject evidence with this testimony. See Fed. R. Evid. 901; United States v. Spence, 566 F. App'x 240, 244 (4th Cir. 2014) (holding testimony from law enforcement agent, who was familiar with the subject voices, and jail employee was more than sufficient to authenticate an audio recording of a jailhouse telephone conversation); United States v. Brewer, 533 F. App'x 234, 236 (4th Cir. 2013) (holding the district court did not abuse its discretion in admitting a video clip and related photographs taken from a surveillance camera where "[w]itness testimony authenticated the time and date the challenged video clip was recorded, satisfying [Federal Rule of Evidence] 901"). Importantly, the transcripts of the telephone calls were only admitted for illustrative purposes, and the court instructed the jurors that if they perceived any variation between the transcripts and the audio

8

recordings, the recordings control, (see 2/5/16 Tr., DE # 165-2, at 108-09), and the jurors

presumably followed this instruction, see Zelaya, 908 F.3d at 930.   Thus, petitioner did not

suffer any prejudice that might have resulted from any discrepancies.   See Spence, 566 F.

App'x at 244.

Finally, petitioner claims the prosecutor engaged in misconduct by misstating facts in

closing argument.

> A prosecutor's improper closing argument may "so infect[ ] the trial with
> unfairness as to make the resulting conviction a denial of due process."   In
> determining whether a defendant's due process rights were violated by a
> prosecutor's closing argument, we consider (1) whether the remarks were, in fact,
> improper, and, (2) if so, whether the improper remarks so prejudiced the
> defendant's substantial rights that the defendant was denied a fair trial.

United States v. Lighty, 616 F.3d 321, 359 (4th Cir. 2010) (citations omitted).

In support of this ground, petitioner relies on two of the prosecutor's statements during

closing argument, one regarding a co-conspirator's testimony and the other regarding the

surveillance video.   (See Mem., DE # 234-1, at 9.)   Even assuming the prosecutor inaccurately

characterized that evidence, petitioner cannot show prejudice.   The court instructed the jurors

that statements and arguments made by the lawyers are not evidence, (2/5/16 Tr., DE # 165-2, at

103), and that their recollection of the evidence controls, not what the lawyers say, (id. at 104).

Again, jurors are presumed to follow the court's instructions.   See Zelaya, 908 F.3d at 930.

Furthermore, other evidence against petitioner was very strong, weighing against any prejudice

petitioner may have suffered from the two remarks.   See Lighty, 616 F.3d at 362 (examining

the weight of the evidence against the defendant in assessing prejudice).

Based on the facts alleged, petitioner has not stated a claim for relief based on

prosecutorial misconduct.   As such, neither trial counsel nor appellate counsel was deficient in

9

failing to raise these issues. See <u>Moore v. United States</u>, 934 F. Supp. 724, 731 (E.D. Va. 1996)

("Failure to raise a meritless argument can never amount to ineffective assistance.").

**B.    Claim Three (Insufficiency of Evidence)**

Next, petitioner claims there was insufficient evidence to convict him.    Petitioner bases

this claim on alleged inconsistent testimony, contradictory testimony, lack of fingerprints,

withheld evidence, and uncorroborated evidence.    (See Mem., DE # 234-1, at 11-13; Resp., DE

# 261, at 3.)

Trial counsel moved for a judgment of acquittal pursuant to Federal Rule of Evidence 29,

(2/5/16 Tr., DE # 165-2, at 40-41), thereby challenging the sufficiency of the government's

evidence, <u>see</u> Fed. R. Crim. P. 29 ("After the government closes its evidence or after the close of

all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any

offense for which the evidence is insufficient to sustain a conviction.").    Although the court

denied the motions, (2/5/16 Tr., DE # 165-2, at 40-41), trial counsel cannot be deemed deficient

for failing to do something that he in fact did.

Appellate counsel did not challenge the sufficiency of the government's evidence.

However, the court agrees with the government that given the "heavy burden" a defendant faces

when seeking reversal based on the sufficiency of the evidence, <u>see</u> <u>United States v. Gutierrez</u>,

963 F.3d 320, 337 (4th Cir. 2020) ("As the party challenging on appeal the sufficiency of the

evidence, Appellants bear a 'heavy burden,' and must show that a rational trier of fact could not

have found the essential elements of the crime beyond a reasonable doubt." (internal quotation

marks, alteration, and citation omitted)), <u>cert. denied sub nom.</u> <u>Gilmore v. United States</u>, 141 S.

Ct. 419 (2020), and <u>cert. denied</u>, No. 20-6342, 2021 WL 78410 (U.S. Jan. 11, 2021), appellate

counsel's decision to forego such a challenge and concentrate on the stronger issue—the denial of the motion to suppress—was objectively reasonable.

Because neither trial counsel nor appellate counsel was deficient regarding a challenge to the sufficiency of the evidence, petitioner has defaulted his third claim.

### C. Claim Four (Abuse of Discretion)

Petitioner's fourth claim alleges the court "abused its discretion on many levels[.]" (Mem., DE # 234-1, at 14.)   The government argues that appellate counsel reasonably declined to raise these issues and that petitioner cannot show he was prejudiced thereby.   The court agrees.

First, petitioner argues the court improperly restricted trial counsel's questioning of a government witness about a prior conviction.   (See Mem., DE # 234-1, at 14.)   According to petitioner, this restriction deprived him of the ability to attack the witness's credibility.   (See id. at 14-15.)   To the contrary, the court permitted trial counsel to ask the witness about the nature of all of his prior felony convictions.   (See 2/3/16 Tr., DE # 165, at 165.)   The court did not permit trial counsel to explore the details of the witness's obtaining property by false pretense conviction.   (Id.)   That ruling was a proper exercise of the court's discretion.   See United States v. Lopez-Medina, 596 F.3d 716, 737-38 (10th Cir. 2010) (holding the district court properly prohibited the defendant "from eliciting the *specific facts and circumstances* underlying [the witness's] conviction").   Furthermore, petitioner was able to challenge the witness's credibility by questioning the witness about his plea agreement with the government, the fact that he had not been prosecuted for selling crack cocaine, and his controlled substance addiction. (2/3/16 Tr., DE # 165, at 165-74.)   Thus, appellate counsel was not deficient for failing to raise

11

this meritless issue.

Petitioner also contends the court erred in sustaining the government's objection to testimony about an alleged co-conspirator's denial of participation in the conspiracy. (Mem., DE # 234-1, at 15.) The alleged co-conspirator did not testify at trial, and her statement was excluded as hearsay. (See 2/3/16 Tr., DE #165, at 254-55.) This ruling was proper. See Fed. R. Evid. 801(d)(2)(E) (excluding from hearsay a co-conspirator's statement "offered against an opposing party"); United States v. Abbas, 74 F.3d 506, 511 (4th Cir. 1996) ("The rule permits introduction of co-conspirators' statements as evidence against defendant co-conspirators. . . . But the prosecution is not a 'party' against whom such testimony may be tendered." (citation omitted)). Therefore, appellate counsel was not deficient for failing to appeal this meritless issue.

Next, petitioner contends the court should not have precluded trial counsel from arguing in closing that the government had selectively chosen which parts of each recorded jail telephone call to play. (See Mem., DE # 234-1, at 15-16.) The court did make this ruling. (See 2/4/16 Tr., DE # 165-1, at 133-34.) However, under the rule of completeness, Fed. R. Crim. P. 106, the court also ruled that, on petitioner's request, the government would be required to play the entirety of each recorded call. (Id. at 134.) Trial counsel declined to make such a request. (Id.) He was able to argue in closing that the government had selectively chosen only a few clips out of 2,000 recorded calls. (Id.) Given the trial court's broad discretion in regulating closing arguments, United States v. Baptiste, 596 F.3d 214, 226 (4th Cir. 2010), appellate counsel's decision not to raise this issue was objectively reasonable.

Also, petitioner relies on the court's "'extraneous communication with the jury.'"

12

(Mem., DE # 234-1, at 16.)   At the conclusion of the second day of petitioner's retrial, and in open court with petitioner present, the court presented the jury with options about a schedule for the following day.   (2/4/16 Tr., DE # 165-1, at 249.)   The court instructed the jurors to retire to the jury room to discuss the matter and informed them it would go back to the room shortly to learn of their decision.   (Id. at 249-50.)   Thereafter, the court along with court staff went to the jury room, learned of the jury's decision, and returned to the courtroom.   In open court with petitioner present, the court informed the parties of the jury's decision about the schedule.   (Id. at 250.)

A defendant has the right to be present at every stage of trial, including when the judge communicates with the jury.   Fed. R. Crim. P. 43; United States v. Arriagada, 487 F.2d 487, 488 (4th Cir. 1971).   "Any departure from the rule is error and, 'unless the record completely negatives any reasonable possibility of prejudice arising from such error', mandates a new trial." Arriagada, 487 F.2d at 488 (citation omitted).   Although petitioner was not present when the court communicated with the jury in the jury room, the record makes clear that the sole reason for the court's communication with the jury was purely for an administrative reason—one having nothing to do with the substance of case—and the court informed petitioner of the content of the communication.   There is no reasonable possibility petitioner was prejudiced by not being present when the subject communication was made.   Neither trial nor appellate counsel was deficient in failing to raise this issue.

Petitioner also argues the court abused its discretion in limiting trial counsel's cross-examination of a detective about a confidential informant.   (Mem., DE # 234-1, at 16.)   On cross-examination, the detective testified that the informant did not claim to have purchased any

13

marijuana from, or sold any marijuana to, petitioner nor did he claim to be part of petitioner's organization. (2/5/16 Tr., DE # 165-2, at 18-19.) The informant provided the detective with information about certain details of the organization, which the detective verified. (Id. at 19-20.) The informant was paid for the information he provided in this case. (Id. at 21-22.) According to the detective, he did not act on any information the informant provided; the informant was used to corroborate other information. (Id. at 22.) The court permitted trial counsel to further cross-examine the detective about additional details regarding his interaction with the informant, prohibiting only the disclosure of the informant's identity. (See id. at 24-28, 30.)

"Because the informant was not a participant in the crime but a mere 'tipster,' disclosure of his or her identity was not required," United States v. Graham, 73 F. App'x 588, 591 (4th Cir. 2003) (citation omitted), and therefore, the court did not improperly limit trial counsel's cross-examination on the topic. Appellate counsel was not deficient for failing to raise this meritless issue.

Finally, petitioner contends the court abused its discretion with several jury instructions. Specifically, he contends the court misstated the law regarding the government's burden of proof and plea bargaining. (Mem., DE # 234-1, at 16.) The court accurately stated the law on both subjects. (Compare 2/5/16 Tr., DE # 165-2, at 103 (explaining burden of proof as reasonable doubt), 107 (explaining plea bargaining), with United States v. Williams, 152 F.2d 294, 297-98 (4th Cir. 1998) (approving reasonable doubt instruction); Harman v. Mohn, 683 F.2d 834, 836-37 (4th Cir. 1982) ("Plea bargaining is constitutionally permissible and is an important and valuable part of the criminal justice system. Without plea bargains the state and federal criminal

14

courts would collapse under the burden of cases waiting the time consuming jury selection and trial."). Petitioner also contends the court should have given his requested instruction. (Mem., DE # 234-1, at 16.) Trial counsel requested, and the court denied, an instruction on the conspiracy charge that the jury must "agree on the same participants of the conspiracy." (2/5/16 Tr., DE # 165-2, at 126-27.) The court did not err by failing to give such an instruction. See United States v. Green, 599 F.3d 360, 367-68 (4th Cir. 2010) ("The Government is not required to prove that a defendant knew all his co-conspirators or all of the details of the conspiracy; moreover, guilt may be established even by proof that a defendant played only a minor role in the conspiracy." (citation omitted)). Neither trial counsel nor appellate counsel was deficient regarding the alleged issues with the jury instructions.

In the absence of trial or appellate counsel's deficiency, petitioner has defaulted his fourth claim.

### D. Claim Five (Apprendi Error)

In his next claim, petitioner contends his sentence exceeds the statutory maximum in violation of the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000). There, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. That is exactly what occurred here.

The grand jury charged petitioner with conspiracy to distribute marijuana, alleging the quantity attributable to defendant was 100 kilograms or more. (Indictment, DE # 1, at 1-2.) It further charged him with possession with intent to distribute 50 kilograms or more of marijuana. (Id. at 3.) At trial, the court instructed the jury to determine, beyond a reasonable doubt, the

15

quantity of marijuana attributable to petitioner as a member of the conspiracy and indicate the amount—either (1) 100 kilograms or more or (2) 50 kilograms or more but less than 100 kilograms—on the special verdict form.    (2/5/16 Tr., DE # 165-2, at 118, 128.)    Also, the court instructed the jury that to find petitioner guilty of possession with intent to distribute, it must find, as an element of the offense and beyond a reasonable doubt, that he knowingly possessed 50 kilograms or more of marijuana.    (Id. at 120-21, 124.)    The jury found petitioner guilty of conspiracy and attributed to him 50 kilograms or more, but less than 100 kilograms, of marijuana.    (Verdict, DE # 148.)    It also found him guilty of possession with intent to distribute 50 kilograms or more of marijuana.    (Id.)    The statutory maximum terms of imprisonment for each of these offenses is 20 years.    See 21 U.S.C. §§ 841(b)(1)(C), 846.    The court sentenced petitioner to 132 months on each count, to run concurrently, well below each statutory maximum term.    No Apprendi error occurred.

Petitioner takes issue with the fact that the special verdict form during his first trial included an option for the jury to find a quantity of marijuana less than 50 kilograms, which would have subjected him to a statutory maximum term of imprisonment of five years, but the special verdict form in the retrial did not.    (See Mem., DE # 234-1, at 17.)    See also 21 U.S.C. § 841(b)(1)(D).    The court was not bound by the special verdict form used in the first trial. The court instructed the jury and submitted the issues for the jury's consideration on the special verdict form based on the charges against petitioner and supported by the evidence at the *retrial*. See United States v. Moye, 454 F.3d 390, 404 n.1 (4th Cir. 2006) (Gregory, J., dissenting in part) (recognizing a jury instruction "is proper only 'if there is a foundation in evidence to support it'" (citation omitted)).

16

Because petitioner's sentence does not violate Apprendi, neither trial nor appellate

counsel was deficient for failing to raise the issue, and petitioner has defaulted his fifth claim.

### E.    Claim Six (Sentencing Errors)

In his sixth claim, petitioner alleges the court committed sentencing errors.    First, he

claims the court erred in sentencing him as a career offender.    (Mem. DE # 234-1, at 18-19.)

Second, he contends the court erred in imposing certain conditions on his supervised release.

(Id. at 19-20.)    The court addresses these purported errors in turn.

Although the court concluded petitioner was a career offender, (see 8/29/16 Tr., DE #

194, at 55-56), the court did not impose a sentence of imprisonment consistent with that

designation.    Rather, the court, on petitioner's motion, varied downward from the applicable

sentencing guideline range (210 to 262 months) based partly on its disagreement with the

enhanced penalties associated with the career offender designation and imposed a sentence

within the *non-career offender* sentencing guideline range (120 to 150 months).    (See Statement

of Reasons, DE # 179, at 1, 3; 8/30/16 Tr., DE # 196, at 12-13, 15.)    Therefore, petitioner did

not suffer prejudice as a result of being deemed a career offender.

Even so, over trial counsel's objection, the court correctly concluded petitioner was a

career offender.[2]    Despite petitioner's arguments to the contrary, his prior North Carolina

convictions for selling marijuana and robbery with a dangerous weapon qualify as predicate

convictions for the career offender guideline enhancement.    See United States v. Pittman, 728

F. App'x 197, 199 (4th Cir. 2018) (holding prior North Carolina conviction for robbery with a

---

[2] Trial counsel objected to the career offender designation, (see 8/29/16 Tr., DE # 194, at 16-20), and did not concede, as petitioner alleges, that petitioner's robbery with a dangerous weapon conviction was a qualifying conviction, (see Mem., DE # 234-1, at 22).

17

dangerous weapon is a crime of violence under U.S.S.G. § 4B1.2(a)); United States v. Valdovinos, 760 F.3d 322, 330 (4th Cir. 2014) (holding prior North Carolina conviction for selling heroin was a felony drug trafficking offense, even though the plea agreement capped the defendant's sentence at 12 months imprisonment).   Also, one of his instant offenses of conviction, possession with intent to distribute marijuana in violation of 21 U.S.C. § 841, is a controlled substance offense for application of the career offender guideline.[3]   See U.S.S.G. § 4B1.2(b) (2016) ("The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.").   Because the court did not sentence petitioner as a career offender nor was his career offender designation incorrect, appellate counsel was not deficient in failing to raise this meritless issue.

Next, petitioner argues the court should not have imposed certain supervised release conditions because they bear no relationship to the instant convictions and impermissibly delegate the court's authority to law enforcement and the Probation Office.   (Mem., DE # 234-1, at 19-20.)   Specifically, petitioner takes issue with the conditions related to his consumption of alcohol, participation in a substance abuse treatment program and in a vocational training program, and consent to a warrantless search.   (Id.)

Non-mandatory conditions of supervised release must be reasonably related to certain factors in 18 U.S.C. § 3553(a), including the history and characteristics of the defendant.   18

_____

[3] Petitioner raises an argument that his instant conspiracy conviction is not a controlled substance offense under the career offender guideline.   (See Mot., DE # 248; Mot., DE # 265.)   Even accepting that argument, petitioner was also convicted of possession with intent to distribute marijuana, which qualifies as such an offense.

18

U.S.C. §§ 3553(a)(1), 3583(d)(1).  Given petitioner's use of alcohol and marijuana, history of

non-compliance with probationary sentences, and educational background, (PSR, DE # 167, ¶¶

29, 32, 41, 52, 54), the challenged conditions were appropriately imposed.  Furthermore, the

court did not improperly delegate its authority to impose conditions of supervision.  Rather, the

court unequivocally ordered petitioner to do certain things, such as participate in a vocational

training program, as directed by the Probation Office, which is permissible.  See United States

v. Byrd, 808 F. App'x 161, 164-65 (4th Cir. 2020) (collecting cases).

Even if any of the challenged conditions were improper, trial counsel's decision not to

object to the condition at sentencing, or appellate counsel's decision not to raise it on appeal, was

not deficient and did not prejudice petitioner.  Considering all the circumstances, the conditions

of petitioner's supervised release were a minor issue at sentencing and on appeal, and the

conditions may be modified at any time while petitioner is under supervision, see 18 U.S.C. §

3583(e)(2).

Because the court did not err in concluding petitioner was a career offender or in

imposing certain supervised release conditions, counsel was not deficient in failing to challenge

either issue.  Even assuming counsel was deficient in either regard, petitioner was not

prejudiced.  Therefore, petitioner has defaulted his sixth claim.

**F.     Claim Seven (Other Grounds of Ineffective Assistance of Counsel)**

Petitioner additionally contends trial counsel acted deficiently by failing to move for a

mistrial.  He claims during the retrial, co-counsel passed notes to trial counsel inquiring why he

was not asking certain questions or objecting and moving for a mistrial.  (Mem., DE # 234-1, at

22.)  Petitioner does not specify what evidence or government practice the notes were

19

referencing.   Without such information, petitioner has not sufficiently alleged deficient conduct by trial counsel.

Next, petitioner argues trial counsel was ineffective because he refused to use petitioner's own recordings to establish the voice on the government's recordings was not petitioner's.   (Id.) Assuming trial counsel was deficient in this regard, other evidence against petitioner was very strong, and thus, he was not prejudiced by trial counsel's failure to introduce his voice recordings.

Petitioner has failed to state sufficient grounds for his freestanding ineffective assistance of counsel claim.

## II. CONCLUSION

In summary, petitioner has failed to state any claim of ineffective assistance of trial or appellate counsel, and therefore, he has defaulted claims two through six and claim seven fails on its merits.

Petitioner's motion to supplement is ALLOWED.   The government's motion to dismiss is ALLOWED, and the § 2255 motion is DISMISSED WITH PREJUDICE.   Petitioner's motion to compel discovery material is DENIED as moot.   The court finds that petitioner has not made "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of

20

appealability is DENIED.    The Clerk is DIRECTED to enter judgment and close this case.

This 24 February 2021.

_____
W. Earl Britt
Senior U.S. District Judge